CHARLES F. PREUSS (State Bar No. 45783)
HILLARY S. WEINER (State Bar No. 203499)
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, California 94105
Telephone: (415) 591-7500
Facsimile: (415) 591-7510
charles.preuss@dbr.com
hillary.weiner@dbr.com

Attorneys for Defendants
ORTHO-MCNEIL PHARMACEUTICAL, INC., now known as ORTHO-McNEIL-JANSSEN PHARMACEUTICALS, INC., and MCKESSON CORPORATION

ORIGINAL

E-filing

EDL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CAROLYN GLAZINER, an individual;

Plaintiff,

v.

ORTHO-MCNEIL PHARMACEUTICAL, INC., a Delaware Corporation; MCKESSON CORP. and DOES 1-500, inclusive,

Defendants.

Case No. CV 08 1989

**DECLARATION OF HILLARY S. WEINER IN SUPPORT OF NOTICE OF REMOVAL AND REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(B) [DIVERSITY]**

I, HILLARY S. WEINER, declare:

1. I am an attorney admitted to practice before all courts of the State of California and am an associate with the law firm of Drinker Biddle & Reath, LLP, attorneys for defendants Ortho-McNeil Pharmaceutical, Inc. ("OMP"), now known as Ortho-McNeil-Janssen Pharmaceuticals, Inc. ("OMJPI"), and McKesson Corporation ("McKesson") in this action. I make this Declaration based on my personal knowledge, in support of the removal by OMP, now known as OMJPI, of *Carolyn Glaziner v. Ortho-McNeil Pharmaceutical, Inc., McKesson Corp., and Does 1-500, inclusive*, Case Number

CGC-07-469227 to this Court. I would and could competently testify to the matters stated in this Declaration if called as a witness.

2. A true and accurate copy of the Complaint (the "Complaint") in this action is attached as **Exhibit A**. The Complaint is the only state court pleading known to OMP, now known as OMJPI, and to McKesson to have been filed in this action.

3. OMP was a corporation existing under the laws of the State of Delaware, with its principal place of business in New Jersey, and is now known as OMJPI, which is a Pennsylvania corporation, with its principal place of business also in New Jersey. OMP, now known as OMJPI, was served with the Summons and Complaint in this action on March 21, 2008.

4. McKesson was served with the Summons and Complaint in this action on March 24, 2008. McKesson consents to removal of this action to this Court.

5. OMP, now known as OMJPI, will file a notice of the filing of this Notice of Removal and Removal in the San Francisco County Superior Court and will serve plaintiff's counsel with a copy.

6. On March 1, 2006, the Judicial Panel on Multidistrict Litigation ("JPML") created MDL 1742, *In re: Ortho Evra Products Liability Litigation*, ruling that all federal actions involving allegations of injury or death from use of the prescription drug Ortho Evra® be centralized for pre-trial purposes in the United States District Court for the Northern District of Ohio, before the Honorable David A. Katz, Case Number 1:06-CV-40000-DAK. To date, over 1200 cases have been transferred to MDL 1742, and transfers of additional "tag-along" actions are pending.

7. Attached as **Exhibit B** is a true and accurate copy of the Declaration of Greg Yonko, Senior Vice President – Purchasing, McKesson Corporation, filed in *Abel, Theresa, et al. v. Ortho-McNeil Pharmaceutical, Inc., et al.*, United States District Court, Northern District of California, Case No. C 06 7551 SBA, on December 8, 2006.

8. Attached as **Exhibit C** is a true and accurate copy of the Slip Opinion denying the plaintiffs' motion to remand in *Barlow, et al. v. Warner-Lambert Co., et al.*,

Case No. CV 03-1647-R(RZx), in the United States District Court for the Central District of California (Western Division), dated April 28, 2003.

9. Attached as **Exhibit D** is a true and accurate copy of the Slip Opinion denying the plaintiffs' motion to remand in *Skinner, et al. v. Warner-Lambert Co., et al.*, Case No. CV 03-1643-R(RZx), in the United States District Court for the Central District of California (Western Division), dated April 28, 2003.

10. I have reviewed reports of verdicts and settlements in cases in this judicial district, brought by plaintiffs claiming serious injuries from the use of prescription drugs or medical devices. Given the similarity between the injuries alleged in those cases and plaintiff's claims, it is reasonably believed that if plaintiff succeeded in proving her allegations in this action, she would recover in excess of $75,000, exclusive of interest and costs. Plaintiffs claiming substantially similar injuries in the Ortho Evra® MDL have specifically alleged that the amount in controversy in their respective actions exceeds $75,000, exclusive of interest and costs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 16, 2008.

HILLARY S. WEINER

DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

SF1\397913.1

EXHIBIT A

SHAWN KHORRAMI, ESQ., SBN 180411
DYLAN POLLARD, ESQ., SBN 180306
SONIA TANDON, ESQ., SBN 239614
KHORRAMI, POLLARD & ABIR, LLP
444 S. Flower Street
Thirty-Third Floor
Los Angeles, CA 90071
Telephone: (213) 596-6000
Facsimile: (213) 596-6010
email: skhorrami@kpalawyers.com

BRIAN KABATECK, ESQ., SBN 152054
RICHARD KELLNER, ESQ., SBN 171416
KABATECK BROWN KELLNER LLP
644 South Figueroa Street
Los Angeles, CA 90071
Telephone: (213) 217-5000
Facsimile: (213) 217-5010
email: bsk@kbklawyers.com

MICHAEL S. BURG, ESQ.
SETH A. KATZ, ESQ.
JANET G. ABARAY, ESQ.
BURG SIMPSON ELDREDGE HERSH JARDINE PC
40 Inverness Drive East
Denver, CO 80112
Telephone: (303) 792-5595
Facsimile: (303) 708-0527

Attorneys for Plaintiffs

FILED
San Francisco County Superior Court
NOV 1 5 2007
GORDON PARK-LI, Clerk
Deputy Clerk
CASE MANAGEMENT CONFERENCE SET
APR 1 8 2008 -9 00 AM
DEPARTMENT 212
SUMMONS ISSUED

SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF SAN FRANCISCO

| | |
|---|---|
| CAROLYN GLAZINER, an individual,<br>Plaintiffs<br>v.<br>ORTHO-MCNEIL PHARMACEUTICAL, INC., a Delaware Corporation; MCKESSON CORP and DOES 1-500, inclusive,<br>Defendants | Case No.<br><br>COMPLAINT FOR DAMAGES BASED ON:<br>1. NEGLIGENCE<br>2. STRICT PRODUCT LIABILITY - FAILURE TO WARN<br>3. BREACH OF EXPRESS WARRANTY<br>4. BREACH OF IMPLIED WARRANTY<br>5. NEGLIGENT MISREPRESENTATION<br>6. FRAUD<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs allege as follows:

## INTRODUCTION

1. Plaintiffs are all individuals who have consumed Defendant ORTHO-MCNEIL PHARMACEUTICAL INC.'s drug Ortho Evra® (hereinafter referred to as "Ortho Evra". Each of the Plaintiffs herein have suffered and/or may continue to suffer potentially fatal side effects such as strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks.

2. Defendant ORTHO-MCNEIL PHARMACEUTICAL INC (hereinafter "ORTHO-MCNEIL") designed, researched, manufactured, advertised, promoted, marketed sold and/or distributed Ortho Evra. Furthermore, Defendant ORTHO-MCNEIL concealed its knowledge of Ortho Evra's risks and trivialized the serious side effects of Ortho Evra from Plaintiffs, Plaintiff's physicians, pharmacists and the public in general.

3. Defendant MCKESSON CORP ("hereinafter "MCKESSON") is a corporation whose principle place of business is San Francisco, California. MCKESSON distributed and sold Ortho Evra in and throughout the State of California.

4. Ortho Evra is an adhesive transdermal birth control patch that delivers continuous levels of the hormones progestin and estrogen through the skin and into the blood stream to prevent pregnancy. Ortho Evra was approved by the FDA in November 2001 and since has been used by over 4 million women. On November 10, 2005 the FDA issued a warning about the increased risks of blood clots associated with the use of Ortho Evra. Specifically, users of Ortho Evra are exposed to 60% more total estrogen in their blood than users of the typical birth control pill which contains 35 micrograms of estrogen.

## JURISDICTION AND VENUE

5. The California Superior Court has jurisdiction over this action pursuant to California Constitution Article VI, Section 10, which grants the Superior Court "original jurisdiction in all causes except those given by statute to other trial courts." The Statutes under which this action is brought do not specify any other basis for jurisdiction.

6. The California Superior Court has jurisdiction over the Defendants because,

based on information and belief, each is a corporation and/or entity and/or person organized under the laws of the State of California, a foreign corporation or association authorized to do business in California and registered with the California Secretary of State or has sufficient minimum contacts in California, is a citizen of California, or otherwise intentionally avails itself of the California market so as to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

7. Venue is proper in this Court pursuant to California Code of Civil Procedure Section 395 in that Defendant MCKESSON has its principle place of business in San Francisco.

8. Furthermore Defendants ORTHO-MCNEIL and MCKESSON have purposefully availed themselves of the benefits and the protections of the laws within the State of California. Defendant MCKESSON has its principle place of business within the state. Defendants ORTHO-MCNEIL and MCKESSON have had sufficient contact such that the exercise of jurisdiction would be consistent with the traditional notions of fair play and substantial justice.

9. Plaintiffs each individually seek relief that is within the jurisdictional limits of the court.

**PARTIES**

**PLAINTIFFS**

10. Plaintiff CAROLYN GLAZINER is a resident of Terre Haute, Indiana, who was prescribed Ortho Evra and was severely injured as a result..

**DEFENDANTS**

11. Defendant ORTHO-MCNEIL is, and at all times material to this action was, a corporation organized, existing and doing business under and by the virtue of the laws of the State of Delaware, with its principle office located at 1000 Route 202 South, P.O. Box 300, Raritan, New Jersey 08869.

12. Defendant ORTHO-MCNEIL is, and at all times material to this action was, authorized to do business, and was engaged in business in the State of California. ORTHO-MCNEIL derives substantial revenue from goods consumed within the State of California.

13. Defendant ORTHO-MCNEIL includes any and all parents, subsidiaries, affiliates,

divisions, franchises, partners, joint venturers and organizational units of any kind, their predecessors, successors and assigns and their pr0esent officers, directors, employees, agents, representatives and other persons acting on their behalf.

14. Plaintiffs are informed and believe, and based thereon allege, that in committing the acts alleged herein, each and every managing agent, agent, representative and/or employee of the defendant was working within the course and scope of said agency, representation and/or employment with the knowledge, consent, ratification, and authorization of the Defendant and its directors, officers and/or managing agents.

15. At all times material to this action, Defendant ORTHO-MCNEIL developed, manufactured, marketed, promoted, sold and/or distributed Ortho Evra in the stream of commerce and in the State of California and the rest of the country.

16. Defendant MCKESSON is, and at all times material to this action was, a corporation organized, existing and doing business under and by virtue of the laws of the State of Delaware, with its principle place of business in San Francisco, California. MCKESSON is, and at all times material to this action was, authorized to do business, and was engaged in substantial commerce and business under the laws of the State of California.

17. Defendant MCKESSON includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint venturers and organizational units of any kind, their predecessors, successors and assigns and their present officers, directors, employees, agents, representatives and other persons acting on their behalf.

18. Plaintiffs are informed and believe, and based thereon allege, that in committing the acts alleged herein, each and every managing agent, agent, representative and/or employee of Defendant MCKESSON was working within the course and scope of said agency, representation and/or employment with the knowledge, consent, ratification and authorization of the defendant and its directors, officers and/or managing agents.

19. At all times relevant to this action, Defendant MCKESSON packaged, distributed, supplied, sold, placed into the stream of commerce, labeled, described, marketed, advertised, promoted and purported to warn or to inform users regarding the risks pertaining to, and

assuaged concerns about the pharmaceutical Ortho Evra.

20. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants named herein as DOES 1 through 500, and each of them, are unknown to Plaintiffs, who therefore, sues said Defendants by such fictitious names.

21. Plaintiffs will ask leave to amend this Complaint to state said Defendants' true identities and capacities when the same has been ascertained.

22. Plaintiffs are informed and believe and based thereupon allege that each of the Defendants designated herein as DOE took part in and participated with the Defendant in all matters referred to herein and was in some manner responsible for the injuries and losses suffered by the Plaintiffs.

23. Plaintiffs are informed and believe and based thereupon allege that at all times herein mentioned each of the Defendants was the agent, servant and/or employee or occupied other relationships with each of the other named Defendants and at all times herein mentioned acted within the course and scope of said agency and/or employment and/or other relationship and each other Defendant has ratified, consented to, and approved the acts of his agents, employees, and representatives, and that each actively participated in, aided and abetted, or assisted one another in the commission of the wrongdoing alleged in this Complaint.

**GENERAL ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION**

24. ORTHO-MCNEIL is the world's leading manufacturer of prescription contraceptives as well as the current market leader in oral and patch contraceptive products. ORTHO-MCNEIL offers a range of prescription birth control options to women, including Ortho Evra, the first transdermal contraceptive patch, ten birth control pills and two diaphragms.

25. The pharmaceutical drug at issue in this litigation is "Ortho Evra". Ortho Evra is the first and only once a week birth control patch. It is worn on the skin for one week and replaced on the same day of the week for three consecutive weeks, with the fourth week free from the patch. Unlike traditional oral contraceptives, such as the birth control pill, that are ingested and metabolized by the body's digestive system, the Ortho Evra patch continuously

releases estrogen and progestin ***directly into*** the bloodstream.

26. ORTHO-MCNEIL filed a new drug application for Ortho Evra on or about December 21, 2000. In the same year, doctors at the FDA reviewing the clinical trials of the Ortho Evra patch warned that blood clots could be a problem if the patch were approved. This was after two of the women developed deep vein thrombosis (a blood clot that forms in the deep veins of leg or pelvic region) which led to pulmonary embolism (a serious and deadly condition of deep vein thrombosis where the clot breaks off into the lung and clogs an artery). One medical reviewer wrote that it would be important to study users after Ortho Evra came into the market for clot problems.

27. Despite those concerns, Ortho Evra received FDA approval for the prevention of pregnancy in November of 2001. Since then, Ortho Evra has been prescribed to more than 4 million women and has become one of the fastest growing birth control method in the United States.

28. Since its approval the there have been many reports that indicate the serious risks associated with the consumption of Ortho Evra. In particular, the FDA has logged 9,116 reports of adverse reactions to the patch in a **17 month** period. This is significantly higher than 1,237 adverse reports generated in a **6 year** period for ORTHO-MCNEIL's oral contraceptive, Ortho Tri-Cyclen. According to the FDA, this only represents 1% - 10% of patch related medical problems so these adverse reactions are actually more prevalent.

29. Furthermore, reports provided by the FDA indicate that the risk of developing and/or dying from a blood clot while using the Ortho Evra patch is at least three times higher than when using birth control pills.

30. On November 10, 2005, the FDA required that the warning label for Ortho Evra be updated to included a new warning indicating that use of Ortho Evra exposes women to a higher level of estrogen than use of other birth control methods. Specifically, the new bolded warning stated that women who use Ortho Evra are exposed to about 60% more total estrogen in their blood than if they were taking a typical birth control pill containing 35 micrograms of estrogen. Increased levels of estrogen exposes women to a greater risk of serious side effects,

particularly blood clots in the legs and lungs, heart attacks and strokes.

31. Ortho Evra was, and still continues to be, aggressively marketed as an easy to use, safe, and effective alternative to oral contraceptives. Its main allure is in its convenience since Ortho Evra only needs to be applied once a week, unlike oral contraceptive that need to be taken daily to be effective.

32. Defendant ORTHO-MCNEIL failed to appropriately warn Plaintiffs and prescribing physicians of the serious risks of strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems.

33. Despite the higher levels of estrogen that are known to be released by Ortho Evra and the blood clot warnings, the package insert states that "there is limited epidemiological data available to determine whether safety with the transdermal route of administration is different than the oral route". The package insert goes on to say that "the information contained in this package insert is principally based on studies carried out in women who used combination **oral** contraceptives...".

34. Defendant ORTHO-MCNEIL knew, or should have known, about the above mentioned risks based upon the state of knowledge of ORTHO-MCNEIL as it existed at that time. Additionally, ORTHO-MCNEIL failed to properly or adequately investigate the safety concerns of Ortho Evra.

35. Defendant ORTHO-MCNEIL's conduct fell below the duty of care that was owed by Defendants to Plaintiffs.

36. Defendant ORTHO-MCNEIL misrepresented the known risks associated with the use of Ortho Evra. ORTHO-MCNEIL also made claims with regards to the safe and efficacious nature of their product in the prevention of pregnancy.

37. Defendant ORTHO-MCNEIL negligently and recklessly failed to inform the public, prescribing healthcare professionals and the FDA of the risks of strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems associated with use of their product, Ortho Evra.

38. Defendant ORTHO-MCNEIL was careless and negligent in their manufacturing,

testing, selling, distributing, merchandising, advertising, promoting, packaging, and marketing of Ortho Evra.

39. By reason of the foregoing, Plaintiffs have suffered from strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems.

## FRAUDULENT CONCEALMENT

40. Any applicable statute of limitations have been tolled by the knowing and active concealment and denial of facts as alleged herein by the Defendants. Plaintiffs have been kept in ignorance of vital information essential to the pursuit of these claims, without any fault or lack of diligence on their part. Plaintiffs could not have reasonably discovered the dangerous nature and unreasonable adverse side effects associated with Ortho Evra. As a result, Plaintiffs did not discover the facts giving rise to these claims until less than one year before the filing of this Complaint.

41. Defendants are and were under a continuing duty to disclose the true character, quality and nature of the patch to Plaintiffs. Because of their concealment of the true character, quality and nature of the contraceptive, Defendants are estopped from relying on any statute of limitations defense.

## FIRST CAUSE OF ACTION
***Negligence***
(Against Defendants ORTHO-MCNEIL and MCKESSON)

42. Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint as though fully set forth in this paragraph.

43. Defendants had a duty to exercise reasonable care in the manufacture, sale, research, development, inspection, labeling, promoting, marketing, and/or distribution of Ortho Evra into the stream of commerce, including a duty to assure that this patch did not cause users to suffer from unreasonable, dangerous side effects.

44. Defendants ORTHO-MCNEIL and MCKESSON failed to exercise ordinary care in the manufacture, sale, testing, quality assurance, quality control, marketing and/or distribution of Ortho Evra into interstate commerce, in that Defendants knew or should have known that

using Ortho Evra created a high risk of unreasonable dangerous side effects, including but not limited to the risk of strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems.

45. Defendants ORTHO-MCNEIL and MCKESSON breached their duty to Plaintiffs and were negligent in the licensing, testing, design, manufacture, packaging, warning, advertising, promotion, distribution, and sale of Ortho Evra in that Defendants:

A. Failed to use ordinary care in designing and manufacturing the Ortho Evra so as to avoid the aforementioned risks to Plaintiffs;

B. Failed to accompany Ortho Evra with proper warnings regarding the possible adverse side effects associated with the use of the patch and the comparative severity and duration of such adverse effects, i.e., the warnings given did not accurately reflect the symptoms, scope or severity of the side effects;

C. Failed to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety and side effects of Ortho Evra;

D. Failed to provide adequate training to medical care providers for appropriate use of Ortho Evra;

E. Failed to warn Plaintiffs, either directly or indirectly, orally or in writing, about the following:

(i) The need for comprehensive, regular monitoring to ensure early discovery of potentially serious side effects like blood clots, deep vein thrombosis and pulmonary emboli;

(ii) The possibility of becoming injured, disabled or dying as a result of using Ortho Evra.

F. Failed to adequately test and/or warn about the serious side effects of Ortho Evra;

G. Failed to include adequate warnings with Ortho Evra that would alert Plaintiffs, physicians, hospitals, and clinics, to the potential risks and the

nature, scope, severity, and duration of any serious side effects of Ortho Evra;

H. Continued to promote the efficacy and safety of Ortho Evra while providing little or no warnings, and downplaying any risks, even after Defendants knew of the risks of serious injury and/or death;

I. Delayed warnings of, and then failed to provide adequate warnings about the serious injuries, which may have dissuaded medical providers from prescribing Ortho Evra and deprived women of information so that they can weigh the true risks against the benefits of prescribing Ortho Evra; and

J. Were otherwise careless or negligent.

46. Despite the fact that Defendants knew or should have known that Ortho Evra caused unreasonably dangerous side effects, Defendants continued and are currently continuing to market, manufacture, distribute and/or sell Ortho Evra to consumers, including Plaintiffs and their doctors.

47. Defendants knew or should have known that consumers, such as Plaintiffs, would suffer injury as a result of Defendants' failure to exercise ordinary care as described above.

48. Plaintiffs are entitled to punitive damages because the Defendants' failure to warn was reckless and without regard for the public's safety and welfare. The Defendants misled both the medical community and the public at large, including Plaintiffs, by making false representations about the safety of Ortho Evra. The Defendants downplayed, understated, and disregarded their knowledge of the serious side effects associated with the use of Ortho Evra despite available information demonstrating that their products were likely to cause serious and potentially fatal side effects to users like Plaintiffs.

49. As a direct, proximate and legal result of the negligence, carelessness, other wrongdoing and actions of the Defendants described herein, Plaintiffs were, and/or still are, caused to suffer severe injuries including diminished enjoyment of life, strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent

health problems.

50. Based upon information and belief, Defendants actually knew of Ortho Evra's defective nature, as set forth herein, but continued, and still continue, to design, manufacture, market and sell the patch so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiffs, in conscious disregard of the foreseeable harm caused by the patch.

51. Defendants' conduct in the license, design, manufacturing, assembly, packaging, warning, marketing, advertising, promotion, distribution and sale of Ortho Evra constituted malice, oppression and fraud, including, but not limited to:

A. Aggressively marketing and promoting Ortho Evra, knowing the high risks posed by failing to conduct sufficient pre-clinical and clinical testing and adequate post-marketing surveillance;

B. Failing to include adequate warnings with Ortho Evra that would alert consumers, physicians, hospitals, clinics, and other users to the potential risks and the nature, scope, severity, and duration of any serious side effects of the patch, particularly, strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems;

C. Continuing to promote the efficacy and safety of the patch, while providing little or no warnings, and downplaying any risks, even after Defendants knew of the increased risks associated with use of Ortho Evra as opposed to oral contraceptives;

D. Delaying warnings of the dangerous side effects which may have dissuaded medical providers from prescribing Ortho Evra so freely, and depriving women of information so that they could weigh the true risks against the benefits of using the patch, was fraudulent, knowing misconduct, and/or conduct undertaken recklessly and with conscious disregard for the safety of consumers such as the Plaintiffs, such as to

constitute despicable conduct, and oppression, fraud and malice, and such conduct was at all times relevant ratified by the corporate Defendants herein, thereby entitling Plaintiffs punitive damages in an amount appropriate to punish and set an example of Defendant.

52. As a result of ORTHO-MCNEIL and MCKESSON's conduct, Plaintiffs suffered injuries and damages herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein below.

**SECOND CAUSE OF ACTION**
***Strict Product Liability - Failure to Warn***
(Against Defendants ORTHO-MCNEIL and MCKESSON)

53. Plaintiffs incorporate by reference the allegations in all proceeding paragraphs of this Complaint as though fully set forth in this paragraph.

54. Defendants ORTHO-MCNEIL and MCKESSON are the manufacturer and/or supplier of Ortho Evra.

55. Ortho Evra manufactured and/or supplied by Defendants ORTHO-MCNEIL and MCKESSON was unaccompanied by proper warnings regarding all possible side effects associated with their use and the comparative severity, incidence, and duration of such adverse effects, i.e., the warnings given did not accurately reflect the signs, symptoms, incidence, scope or severity of the side effects.

56. Defendants failed to perform adequate testing that would have shown that Ortho Evra possessed serious potential side effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made, both with respect to the use of the patch.

57. Ortho Evra manufactured and/or supplied by Defendants was defective due to inadequate post-marketing surveillance and/or warnings or instructions because, after the manufacturer knew or should have known of the risks of injury from Ortho Evra, they failed to provide adequate warnings to users or consumers of the patch and continued, and still continue, to aggressively promote Ortho Evra.

58. Ortho Evra manufactured and/or supplied by Defendants was defective because Defendants were aware that the amount of estrogen that is released from the patch is much higher than the levels associated with oral contraceptives.

59. As a direct, proximate and legal result of the negligence, carelessness, other wrongdoing and actions of Defendants described herein, Plaintiffs have been injured as described above.

60. Based upon information and belief, Defendants actually knew of the defective nature of Ortho Evra, as set forth herein, but continued, and still continue, to design manufacture, market and sell Ortho Evra so as to maximize sales and profits at the expense of the health and safety of the public including Plaintiffs, in conscious disregard of the foreseeable harm caused by Ortho Evra.

61. Plaintiffs could not , by reasonable exercise of care, have discovered the defects and dangers of Ortho Evra.

62. Defendants conduct in the license, design, manufacturing, assembly, packaging, warning, marketing, advertising, promotion, distribution, and sale of Ortho Evra constituted malice, oppression and fraud, including, but not limited to:

A. Aggressively marketing and promoting Ortho Evra, knowing the high risks posed by failing to conduct sufficient pre-clinical and clinical testing and adequate post-marketing surveillance;

B. Failing to provide complete literature with regards to Ortho Evra, and indicating the need for monitoring while on the patch;

C. Failing to include adequate warnings with Ortho Evra that would alert consumers, physicians, hospitals, clinics and other users to the potential risks and the nature, scope, severity, and duration of any serious side effects of the drug, particularly the risk of strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems;

D. Continuing to promote the efficacy and safety of the drug, while providing

little or no warnings, and downplaying any risks, even after Defendants knew of the increased risks associated with Ortho Evra use;

E. Delaying warnings about the dangerous side effects which may have dissuaded medical providers from prescribing Ortho Evra so freely, and depriving women of information so that they could weigh the true risks against the benefits of using the patch, was fraudulent, knowing misconduct, and/or conduct undertaken recklessly and with conscious disregard for the safety of consumers such as the Plaintiffs, such as to constitute despicable conduct, fraud and malice, and such conduct was at all times relevant ratified by corporate Defendants herein, thereby entitling Plaintiffs to punitive damages in an amount appropriate to punish and set an example of Defendant.

63. Defendants' actions, as described above, were performed willfully, intentionally, and with reckless disregard for the rights of Plaintiffs and the public.

64. As a result of Defendants' conduct, Plaintiffs have sustained injuries described above.

65. Accordingly, Plaintiffs seek and are entitled to compensatory and punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein below.

**THIRD CAUSE OF ACTION**
***Breach of Express Warranty***
(Against Defendants ORTHO-MCNEIL and MCKESSON)

66. Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint as though fully set forth in this paragraph.

67. Defendants, ORTHO-MCNEIL and MCKESSON, through description, affirmation of fact, and promise relating to Ortho Evra, to the FDA, prescribing physicians, and the general public, including Plaintiffs, expressly warranted that Ortho Evra was safe and well accepted by users.

68. Defendants, ORTHO-MCNEIL and MCKESSON further expressly warranted that Ortho Evra did not produce any side effects in excess of those risks associated with oral contraceptives, that the side effects were reflected accurately in the warnings, and that it was accurately tested and fit for its intended use.

69. Ortho Evra does not conform to these express representations because it is not safe as its use produces serious adverse side effects including the risk of strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems.

70. As such, Defendants' product was neither in conformity to the promises, descriptions or affirmations of fact made about the patch nor adequately contained, packaged, labeled or fit for the ordinary purposes for which such goods are used.

71. Defendants knew or should have known that, in fact, said representations and warranties were false and misleading in that Ortho Evra was not safe and/or fit for its intended use, and in fact resulted in serious injuries to the user.

72. Plaintiffs relied on the express warranties of the Defendants herein. Members of the medical community, including physicians, and other healthcare professionals, relied upon the representations and warranties of the Defendants for use of Ortho Evra in prescribing, recommending, and/or dispensing the product.

73. Defendants thereafter breached their express warranties to Plaintiffs by: (i) manufacturing, marketing, packaging, labeling, and selling Ortho Evra to Plaintiffs in such a way that misstated the risks of injury, without warning or disclosure thereof by package and label of such risks to Plaintiffs or their prescribing physicians or pharmacists, or without so modifying or excluding such express warranties; (ii) manufacturing, marketing, packaging, labeling, and selling Ortho Evra to Plaintiffs, which failed to prevent pregnancy in a safe manner and without injury; and (iii) manufacturing, marketing, packaging, labeling, and selling Ortho Evra to Plaintiffs, thereby causing injury to each.

74. As a direct and proximate result of Defendants' conduct the Plaintiffs were and still are caused to suffer severe injuries and physical pain including diminished enjoyment of

life, strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems.

75. Plaintiffs are entitled to punitive damages because Defendants' failure to warn was reckless and without regard to their welfare. Defendants misled both the medical community and the public at large, including Plaintiffs, by making false representations about the safety of their product. Defendants downplayed, understated, and disregarded their knowledge of the serious side effects associated with the use of Ortho Evra, despite available information demonstrating that it was likely to cause serious and sometimes fatal side effects to users.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein below.

**FOURTH CAUSE OF ACTION**
***Breach of Implied Warranty***
(Against Defendants ORTHO-MCNEIL and MCKESSON)

76. Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint as though fully set forth in this paragraph.

77. At the time Defendants ORTHO-MCNEIL and MCKESSON marketed, sold, and distributed Ortho Evra, for use by Plaintiffs, Defendants knew of the use for which Ortho Evra was intended and impliedly warranted the patch to be of merchantable quality and safe and fit for its intended use.

78. Defendants ORTHO-MCNEIL and MCKESSON impliedly represented and warranted to Plaintiffs, healthcare professionals and the FDA that the Ortha Evra it was supplying was safe and fit for ordinary use.

79. Plaintiffs and members of the medical community relied on Defendants warranties that their product, Ortho Evra, was of merchantable quality and safe and fit for its intended use.

80. Contrary to such implied warranties, Ortho Evra was not of merchantable quality or safe or fit for its intended use, because it was unreasonably dangerous and unfit for the ordinary purposes for which it was used, as described above.

81. Defendant's conduct in the license, design, manufacturing, assembly, packaging, warning, marketing, advertising, promotion, distribution, and sale of Ortho Evra constituted malice, oppression and fraud, including but not limited to:

A. Marketing and promoting the product aggressively, knowing the high risks posed by failing to conduct sufficient pre-clinical and clinical testing and adequate post-market surveillance;

B. Failing to provide complete literature with regards to Ortho Evra and indicating the need for monitoring while on the patch;

C. Failing to include adequate warnings with Ortho Evra that would alert consumers, physicians, hospitals, clinics and other users of the potential risks and the nature, scope, severity and duration of any serious side effects of the patch, particularly, the risks of strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems;

D. Continuing to promote the efficacy and safety of Ortho Evra, while providing little or no warnings, and downplaying any risks, even after the Defendants knew of the increased risks associated with use of their product;

E. Delaying warnings of, and then failing to provide adequate warnings about the dangerous side effects which may have dissuaded medical providers from prescribing Ortho Evra so freely, and depriving women of information so that they could weigh the true risks against the benefits of prescribing the product, was fraudulent, knowing misconduct, and/or conduct undertaken recklessly and with conscious disregard for the safety of consumers like Plaintiffs, such as to constitute despicable conduct, oppression, fraud and malice, and such conduct was at all times relevant ratified by the corporate Defendants herein, thereby entitling Plaintiffs punitive damages in an amount appropriate to punish and set an example

of the Defendants.

82. As a direct, proximate and legal result of Defendants' negligence, carelessness and other wrongdoing described herein, Plaintiffs have sustained severe injuries as described above.

83. Based upon information and belief, Defendants actually knew of Ortho Evra's defective nature, as set forth herein, but continued to design, manufacture, market, and sell Ortho Evra to maximize sales and profits at the expense of the health and safety of the public, including Plaintiffs in conscious disregard of the foreseeable harm caused by the patch.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein below.

**FIFTH CAUSE OF ACTION**
***Negligent Misrepresentation***
(Against Defendants ORTHO-MCNEIL and MCKESSON)

84. Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint as though fully set forth in this paragraph.

85. Defendants ORTHO-MCNEIL and MCKESSON, having undertaken to prepare, design, research, develop, manufacture, inspect, label, market, promote, and sell Ortho Evra, owed a duty to Plaintiffs and the medical community to provide them accurate and complete information regarding this product.

86. The Defendants' advertising program, by containing affirmative misrepresentations and omissions, falsely and deceptively sought to create the image and impression that the use of Ortho Evra was safe, and had no unacceptable side effects.

87. On information and belief, Plaintiffs aver that Defendants failed to disclose, misstated, downplayed, and understated the health hazards and risks associated with the use of Ortho Evra. Defendants deceived potential users and prescribers of the patch by relaying only allegedly positive information, while concealing, misstating and downplaying the known adverse and serious health effects.

88. Defendants knew or were aware or should have known or been aware that Ortho Evra had been insufficiently tested and that it lacked necessary warnings. Defendants were or

should have been in possession of evidence demonstrating that their product created a high risk of unreasonable, dangerous side effects, including but not limited to strokes, pulmonary emboli, blood clots, deep vein thrombosis, and heart attacks, as well as other severe permanent health problems. Nonetheless, Defendants continued to market Ortho Evra by providing false and misleading information with regard to its safety and efficacy.

89. Plaintiffs and their doctors justifiably relied to their detriment upon Defendants' positive misrepresentations concerning Ortho Evra.

90. As a result of Defendants' conduct, Plaintiffs have sustained injuries as described above. Accordingly, Plaintiffs seek and are entitled to compensatory and punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them , as set forth herein below.

**SIXTH CAUSE OF ACTION**
***Fraud***
(Against Defendants ORTHO-MCNEIL and MCKESSON)

91. Plaintiffs incorporate by reference the allegations in all preceding paragraphs of this Complaint as though fully set forth in this paragraph.

92. ORTHO-MCNEIL and MCKESSON, having undertaken to prepare, design, research, develop, manufacture, inspect, label, market, promote and sell Ortho Evra, owed and continue to owe a duty to provide accurate and complete information regarding their product.

93. Defendant deceptively sought to create the image and impression that the use of Ortho Evra was just as safe as the oral contraceptives already on the market, and had no unacceptable side effects. by intentionally distributing false information to Plaintiffs, the general public, healthcare professionals and the FDA.

94. On information and belief, Plaintiffs aver that the Defendants intentionally concealed, misstated, downplayed, suppressed, and ignored test results that were unfavorable to the Defendants as well as the results that revealed that Ortho Evra was not safe in the prevention of pregnancy. Defendants deceived potential users and prescribers of the patch by disseminating only allegedly positive information while concealing, misstating and downplaying the known

adverse and serious health effects. Defendants falsely and deceptively kept relevant information from potential Ortho Evra users and minimized safety concerns.

95. These representations were made with the purpose of deceiving and defrauding the public, the FDA and the Plaintiffs in order to gain their confidence and falsely ensure the quality and fitness of Ortho Evra.

96. In representations made to Plaintiffs, physicians and the public in general, Defendants' fraudulently concealed and intentionally omitted information included, but not limited to the following:

A. That Ortho Evra was not as safe as other forms of contraception;

B. That the amount of estrogen Ortho Evra users are exposed to is much higher than the levels that oral contraceptive users are exposed to;

C. The risk of adverse effects is more likely with Ortho Evra use because of the higher levels of estrogen that the user is exposed to;

D. That even after concerns about serious adverse effects were known, Ortho Evra was not adequately tested.

97. Defendants were or should have been in possession of evidence demonstrating that their product caused serious side effects. Nevertheless, they continued to market Ortho Evra and represent falsely in their documents that Ortho Evra was safe and did not present any health risks above those associate with the oral contraceptives on the market.

98. Defendants knew or should have known that the public, including the Plaintiffs would rely on the information that was being distributed.

99. Plaintiffs did in fact rely on and believe Defendants' representations to be true and relied upon the representations, and were induced to purchase and use Ortho Evra. Plaintiffs did not discover the true facts with respect to the dangerous and serious side effects or the false representations that were made by Defendants, nor could the Plaintiffs have discovered the true facts with reasonable diligence.

100. Had the Plaintiffs known of the true facts with respect to the dangerous and serious health risks of Ortho Evra, Plaintiffs would not have purchased or used Ortho Evra nor

would they have relied on Defendants' false representations.

101. Defendants concealment and omissions of material facts concerning the safety of Ortho Evra was made purposefully, wilfully, wantonly and/or recklessly, to mislead Plaintiffs, and their physicians into continued use and/or dispensing of Ortho Evra.

102. Plaintiffs are entitled to punitive damages because the failure of the Defendants to warn was reckless and without regard for the public's safety and welfare. Defendants misled both the medical community and the general public, including the Plaintiffs, through false representations about the safety of Ortho Evra.

103. The Defendants' actions, as described above, were performed willfully, intentionally, and with reckless disregard for the rights of Plaintiffs and the public.

104. Accordingly, Plaintiffs seek and are entitled to compensatory and punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein below.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows for:

1. Costs of suit incurred herein;
2. Special damages according to proof;
3. General damages according to proof;
4. Punitive or exemplary damages according to proof;
5. Prejudgment interest on these losses;
6. For such other and further relief as the Court deems just.

DATED: November 9, 2007

KHORRAMI, POLLARD & ABIR, LLP

By: ______________________
SHAWN KHORRAMI, ESQ.
Attorney for Plaintiffs

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury in this action .

DATED: November 9, 2007

KHORRAMI, POLLARD & ABIR, LLP

By: ______________________
SHAWN KHORRAMI, ESQ.
Attorney for Plaintiffs

**EXHIBIT B**

ORIGINAL FILED
06 DEC -8 PM 3:41
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

COPY

CHARLES F. PREUSS (State Bar No. 45783)
BRENDA N. BUONAIUTO (State Bar No. 173919)
DRINKER BIDDLE & REATH LLP
50 Fremont Street, 20th Floor
San Francisco, California 94105
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

E-filing

Attorneys for Defendants
ORTHO-MCNEIL PHARMACEUTICAL, INC. and MCKESSON CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

SBA

| | |
|---|---|
| THERESA ABEL, an individual; LISA ALEXANDER, an individual; LISA ALEXANDER, an individual; NATALIE AMBROSE, an individual; NAOMI ANDERSON, an individual; RONNIE BANKS, an individual; JENNIFER BARNES, an individual; SHANANE BARROW, an individual; ANDREA BREVARD, an individual; MONICA BROWN, an individual; ELIZABETH BROXTERMAN, an individual; REGIN BRYANT, an individual; LAUREN BUCHANON, an individual; LINDA CHAMPION, an individual; O'NESCIAN CLINTON, an individual; RODRINA COLLIER, an individual; DENA COMER, an individual; LORI CROSS, an individual; KIMBERLY EARLES, an individual; APRIL FIELDER, an individual; MARY FREY, an individual; SHERRIE GROVE, an individual; HOLLY HALE, an individual; AUDDRETTA HARRISON, an individual; TANESHA KING, an individual; VERONICA LIPSCOMB, an individual; LYNNELL LUMPKINS, an individual; GABRIELA MENA, an individual; EBONI MITCHELL, an individual; ROCHELLE MORRIS, an individual; LATANGELA NEWSOME, an individual; DESHA NICKERSON, an individual; SANDRA NORMAN, an individual; ISABELLA PARKER, an individual; SUZETTE RAMIREZ, an individual; MONIQUE REED, an | Case No. C 06 7551 **DECLARATION OF GREG YONKO IN SUPPORT OF NOTICE OF REMOVAL AND REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b) [DIVERSITY]** |

individual; GENEVIEVE RENFRO, an individual; JENNIFER ROUSE, an individual; ELIZABETH SMITH, an individual; TJUANA STEWART-MARK, an individual; LATOSHA UNDERWOOD, an individual; COSONDA WEAVER, an individual; SAMANTHA WINCHESTER, an individual;

Plaintiffs,

v.

ORTHO-MCNEIL PHARMACEUTICAL, INC., a Delaware Corporation; MCKESSON CORP. and DOES 1-500, inclusive,

Defendants.

I, GREG YONKO, declare:

1. I am Senior Vice President - Purchasing for McKesson Corporation ("McKesson"). I make this Declaration based on my personal knowledge and/or information assembled by employees of McKesson, which I am informed and believe to be true. I would and could competently testify to the matters stated in this Declaration if called as a witness.

2. McKesson was and is a Delaware corporation, with its principal place of business in San Francisco, California.

3. McKesson was served with the Summons and Complaint in this action on November 15, 2006.

4. McKesson consents to the removal of this action.

5. McKesson had no involvement in the development or preparation of the prescribing information for Ortho Evra® and did not have any responsibility for the content of other written warnings concerning Ortho Evra®.

6. At no time has McKesson had any involvement with the manufacture, development, or testing of Ortho Evra®.

7. At no time has McKesson had any involvement with the packaging,

Drinker Biddle & Reath LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105

labeling, advertising, promotion, or marketing of Ortho Evra®.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 6, 2006, in San Francisco, California.

GREG YONKO

**EXHIBIT C**

APR 28 2003

UNITED DISTRICT OF CALIFORNIA
DEPUTY

KAYE SCHOLER LLP

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| In re REZULIN LITIGATION | CASE NO. CV 03-1647-R(RZx) |
| JACKIE BARLOW; CARMA DEKOVEN; ERNESTINE DELAFONT, ZOE EGGER-MUKARVTZ; and SAMUEL GODBOULDT, Plaintiffs, v. WARNER-LAMBERT CO.; PFIZER INC.; JERROLD OLEFSKY; McKESSON CORP., et al. Defendants. | ~~[PROPOSED]~~ ORDER DENYING PLAINTIFFS' MOTION FOR REMAND |

Defendants removed this action from state court to this Court alleging diversity jurisdiction. Defendants asserted that Jerrold Olefsky and McKesson Corp., both of whom are California residents, were fraudulently joined. Plaintiffs moved to remand to state court. The motions came on for hearing by the Court on April 21, 2003.

Having considered the motions and other documents in support of and in opposition to the motions, having heard the arguments of counsel, and being fully advised in the matter, the Court denies the motion.

The Court finds that Dr. Jerrold Olefsky ("Dr. Olefsky"), a patent-holder and clinical investigator, owed no legal duty to any of the plaintiffs, and, therefore, there is no possibility that the plaintiffs can prove a cause of action against Dr. Olefsky. Thus, Dr. Olefsky must be disregarded for purposes of determining federal diversity

jurisdiction.

The Court further finds that there is no possibility that plaintiffs could prove a cause of action against McKesson, an entity which distributed this FDA-approved medication to pharmacists in California. Pursuant to comment k of the Restatement (Second) of Torts Section 402A and California law following comment k, a distributor of a prescription drug is not subject to strict liability.

Accordingly, this Court has diversity jurisdiction over each of these actions. The motion to remand is denied.

IT IS SO ORDERED.

Dated: April 28, 2003

MANUEL L. REAL

MANUEL L. REAL
UNITED STATES DISTRICT JUDGE

Submitted by:

O'DONNELL & SHAEFFER LLP
633 West Fifth Street, Suite 1700
Los Angeles, California 90071
Telephone: (213) 532-2000
Facsimile: (213) 532-2020

KAYE SCHOLER LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (310) 788-1000
Facsimile: (310) 788-1200

By: [signature]
Robert Barnes
Attorneys for Defendants
WARNER-LAMBERT COMPANY and PFIZER INC.

KAYE SCHOLER LLP

**EXHIBIT D**



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

In re REZULIN LITIGATION

DIANE SKINNER; and DIANE YBARRA,
Plaintiffs,
v.
WARNER-LAMBERT CO.; PFIZER INC.; JERROLD OLEFSKY; McKESSON CORP., et al.
Defendants.

CASE NO. CV 03-1643-R(RZx)

~~[PROPOSED]~~ ORDER DENYING PLAINTIFFS' MOTION FOR REMAND

Defendants removed this action from state court to this Court alleging diversity jurisdiction. Defendants asserted that Jerrold Olefsky and McKesson Corp., both of whom are California residents, were fraudulently joined. Plaintiffs moved to remand to state court. The motions came on for hearing by the Court on April 21, 2003.

Having considered the motions and other documents in support of and in opposition to the motions, having heard the arguments of counsel, and being fully advised in the matter, the Court denies the motion.

The Court finds that Dr. Jerrold Olefsky ("Dr. Olefsky"), a patent-holder and clinical investigator, owed no legal duty to any of the plaintiffs, and, therefore, there is no possibility that the plaintiffs can prove a cause of action against Dr. Olefsky. Thus, Dr. Olefsky must be disregarded for purposes of determining federal diversity jurisdiction.

KAYE SCHOLER LLP

The Court further finds that there is no possibility that plaintiffs could prove a cause of action against McKesson, an entity which distributed this FDA-approved medication to pharmacists in California. Pursuant to comment k of the Restatement (Second) of Torts Section 402A and California law following comment k, a distributor of a prescription drug is not subject to strict liability.

Accordingly, this Court has diversity jurisdiction over each of these actions. The motion to remand is denied.

IT IS SO ORDERED.

Dated: April 28, 2003

MANUEL L. REAL

MANUEL L. REAL
UNITED STATES DISTRICT JUDGE

Submitted by:

O'DONNELL & SHAEFFER LLP
633 West Fifth Street, Suite 1700
Los Angeles, California 90071
Telephone: (213) 532-2000
Facsimile: (213) 532-2020

KAYE SCHOLER LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: (310) 788-1000
Facsimile: (310) 788-1200

By: Robert Barnes
Robert Barnes
Attorneys for Defendants
WARNER-LAMBERT COMPANY and PFIZER INC.

KAYE SCHOLER LLP